# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-1504V
Filed: December 15, 2021

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| CLIFFORD SCHNEIDER, | * | To Be Published |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
| | * | Good Faith; Reasonable Basis |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

*Paul Brazil, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Darryl Wishard, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On October 13, 2017, Clifford Schneider ("Mr. Schneider," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that he developed a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccination on October 22, 2014. Petition ("Pet."), ECF No. 1. Petitioner now seeks an award of attorneys' fees and costs. Based on the record, I award a lump sum of $20,630.47 in fees and costs.

## I. BACKGROUND

### A.    Summary of Relevant Medical Records

---

[1] This Decision has been formally designated "to be published," which means it will be posted on the Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### a.  Medical History Prior to the Allegedly Causal Flu Vaccine

Petitioner's medical history prior to the subject flu vaccine included seizure disorder well-controlled by medication, osteoporosis related to seizure medication, right shoulder arthroscopy, low back pain, sciatica, neck pain, lumbar radiculopathy, lumbar canal stenosis, mild thoracic spondylosis, chronic right knee pain, right hip pain, hypertension, and cervicalgia associated with a whiplash injury. *See* Petitioner's Exhibit ("Pet. Ex.") 13 at 1-8; Pet. Ex. 14 at 9, 90-91, 101-102, 103; Pet. Ex. 15 at 5, 8.

Petitioner received the allegedly causal flu vaccine in his left arm on October 22, 2014 at CVS. Pet. Ex. 1 at 1.

### b.  Medical History After Receipt of the Allegedly Causal Flu Vaccine

#### i.  2014

On December 3, 2014, petitioner presented to his primary care physician, Dr. Josephson for a routine visit. No shoulder concerns were recorded. Pet. Ex. 3 at 1. The record documents a well visit. *Id.* at 2. Pet. Ex. 15 at 4.

#### ii.  2015

On January 14, 2015, petitioner presented to Dr. Dernbach, an orthopedic with complaints of neck and shoulder pain following a rear end motor vehicle accident on December 18, 2014. He had similar neck pain following an accident in 1980 that resolved. Pet. Ex. 14 at 23. The assessment was cervicalgia and imaging was ordered. *Id.* at 25. Cervical x-rays performed on January 20, 2015 showed degenerative disc disease and moderate right C1-C2 facet osteoarthritis. *Id.* at 29, 113. Cervical MRI on January 27, 2015 showed mild stenosis at C3-C4. *Id.* at 29, 122.

On February 11, 2015, petitioner returned to Dr. Dernbach reporting improving but not resolved neck and right occipital pain, worse with movement, and "some left shoulder pain and proximal left arm pain which began after a flu shot at the pharmacy." Pet. Ex. 14 at 27. On examination, petitioner's muscle tone, motor strength, and grip strength of the upper extremities were normal. *Id.* at 28. Based on X-rays performed on January 20, 2015 and cervical MRI performed on January 27, 2015, Dr. Dernbach's assessment was spondylosis and cervicalgia. *Id.* at 28-29.

On June 3, 2015 and December 28, 2015, petitioner presented to Dr. Josephson for routine check-ups; all systems and active problems were reviewed with petitioner. There was no documentation of left shoulder or arm pain at either appointment. Pet. Ex. 15 at 338, 987-92.

#### ii.  2016

On January 7, 2016, petitioner presented to Dr. Josephson with an upper respiratory infection. Pet. Ex. 3 at 19. All systems and active problems were reviewed; there was no documentation of left shoulder or arm pain. *Id.* at 20.

On June 8, 2016, petitioner presented to Dr. Josephson. The "Review of Systems" documented no musculoskeletal trauma, injury, joint, or muscle pain. "No pain or paresthesias" was noted under Neurologic System. Pet. Ex. 15 at 787. At the end of the record, Dr. Josephson included left nerve pain and paresthesia since the October 22, 2014 flu vaccine which was not resolving. *Id.* at 791. Petitioner was referred for neurology consult.

On June 11, 2016, petitioner presented to Dr. Kandel, a neurologist and reported that a flu vaccine on October 22, 2014 caused left arm pain that began approximately ten days after vaccination. Pet. Ex. 8 at 1. He reported numbness, pain and tingling in his left arm. *Id.* Dr. Kandel diagnosed petitioner with cervical radiculopathy. He confirmed the diagnosis by cervical MRI and EMG testing. *Id.* at 5-6, 12. On August 7, 2016, petitioner advised Dr. Kandel that he was filing a vaccine claim and requested that Dr. Kandel confirm that his pain was caused by his October 22, 2014 vaccination. *Id.* at 141. Dr. Kandel advised that he could not do so with any medical certainty. *See id.*

Petitioner returned to Dr. Kandel on August 19, 2016 with continued neck, left shoulder, and left arm pain with numbness. *Id.* at 17. Dr. Kandel wrote that petitioner believed all his pain was associated with a possible adverse vaccine event though it did not seem to be consistent with the clinical and paraclinical findings. *Id.*

Petitioner presented to Dr. Gates, an orthopedist, on August 22, 2016 for right hip arthritis. Pet. Ex. 7 at 5. Upon examination, petitioner displayed full range of motion in both right and left upper extremities. *Id.* at 15-16. Petitioner included "SIRVA" on his patient health intake form. *Id.* at 17.

On August 25, 2016, petitioner returned to Dr. Gates for left ring finger stiffness and triggering. Pet. Ex. 7 at 11. Dr. Gates conducted a left upper extremity examination; petitioner demonstrated full range of motion at the shoulder and 5/5 strength of the deltoid, biceps, triceps, forearm rotators, wrist extensors, digital flexors, and intrinsic strength. *Id.* at 12. Petitioner underwent left ring trigger finger release surgery on August 30, 2016. *Id.* at 9; 28.

Petitioner presented to Dr. Worden for pain management on September 19, 2016 for his left arm and shoulder. Pet. Ex. 9 at 20. Dr. Worden's assessment after examination was left cervical radiculopathy, cervical spinal stenosis, and residual right lumbar radiculopathy. *Id.* at 19. Petitioner received cervical injections at this visit. *Id.* at 8, 15.

On December 7, 2016, petitioner returned to Dr. Josephson for his annual examination. Pet. Ex. 15 at 702. Musculoskeletal and neurological systems were marked as normal. *Id.* at 703. However, at the end of the record there is a statement regarding petitioner's ongoing left shoulder pain since a flu shot a couple of years prior. *Id.* at 708-09.

On December 27, 2016, petitioner presented to Dr. Colon for chronic left shoulder/nerve pain under evaluation with Dr. Kandel and right sciatic pain with recent MRI of the lumbar spine. Pet. Ex. 14 at 30. Dr. Colon focused on the lumbar issues.

Throughout late 2016 and early 2017, petitioner reported tingling, numbness, and pain in multiple extremities to Dr. Kandel and Dr. Colon. *See* Ex. 8 at 108-117; *see* Pet. Ex. 14 at 30-33.

### iii.   2017

On September 5, 2017, petitioner presented to Dr. Josephson with a chief complaint of left arm pain and likely vaccine adverse event related to the flu shot received in October of 2014. Pet. Ex. 15 at 495-496. Dr. Josephson wrote that at a December 3, 2014 visit he discussed with petitioner the use of anti-inflammatories, Tylenol, stretching for range of motion, ice packs, heat packs, and other remedies for his left arm pain with the thought process that this issue would likely be a short-term soft tissue concern which would resolve. *Id.* at 495. Dr. Josephson wrote that at his June 3, 2015 visit, petitioner reported continuing discomfort. *Id.* Dr. Josephson wrote that on December 28, 2015, "the ongoing concern was again reviewed." *Id.* Dr. Josephson wrote on June 8, 2016, ongoing concerns were expressed and he was referred to neurologist. *Id.* Dr. Josephson added that petitioner was "consulting some other medical attorneys and other [sic] in the community to assist him with pursuing this item of concern." *Id.* at 496. The September 5, 2017 record also contained "Left shoulder pain," "Left arm pain," and "Immunization reaction" in the impression and diagnoses list. *Id.* at 501.

On September 28, 2017, petitioner presented to Dr. William Justiz. Pet. Ex. 14 at 34. Petitioner reported having no prior issues with his left shoulder before a flu injection on October 22, 2014. He reported within 24 hours of the vaccine he knew something was wrong. The pain "crescendoed" and on the morning of October 27, 2014 with severe left arm pain, predominantly localized over the left posterior deltoid region, with some pain radiating down into the triceps region. The pain was a 10 out of 10, but he had no weakness or numbness. His shoulder pain was constant at times and other times came and went. Petitioner reported that his pain had improved in December of 2014 when he saw Dr. Dernbach, but in the past several weeks his pain has been a 5 out of 10, particularly in the posterior superior region of the left deltoid. He never had an MRI of his shoulder. *Id.* at 34. Examination revealed normal muscle bulk and tone of the left upper extremity. *Id.* at 37. Dr. Justiz assessed petitioner with a likely SIRVA injury. *Id.* at 38.

On October 4, 2017, petitioner sent a hand-written note enclosing a copy of the September 28, 2017 medical record to Dr. Justiz requesting that Dr. Justiz "update [his] notes in the "history" and "diagnoses" portions for that date. Pet. Ex. 16 at 1. Petitioner requested the record be amended to reflect left shoulder pain after turning items on his lathe, to clarify his epilepsy history, and to reflect that he did not have right shoulder pain. *Id.* at 1-3, ECF No. 57. Dr. Justiz asked petitioner to check with his attorney about amending records as it pertains to a legal case. *See* Pet. Ex. 14 at 43. Petitioner responded with details of his seizure history and advised Dr. Justiz to leave the record as is. *Id.* at 44.

Petitioner followed up with Dr. Justiz on October 30, 2017. He complained of moderate pain in his left shoulder, no arm weakness or numbness, and advised that gabapentin helped with sleeping but not with pain. Pet. Ex. 14 at 47. An MRI of the shoulder performed on September 29, 2017, showed supraspinatus, infraspinatus, and subscapularis tendinosis, moderate arthrosis of the glenohumeral joint, superior labral tear, acromioclavicular joint hypertrophy and small

glenohumeral joint effusion. *Id.* at 41. Dr. Justiz diagnosed him with "Influenza vaccination reaction also known as shoulder injury related to vaccine administration (SIRVA)". *Id.*

On November 2, 2017, petitioner presented to Dr. Josephson "at the request of his attorney…to review some ongoing history and concerns of left shoulder pain." Pet. Ex. 15 at 422. Dr. Josephson wrote that a petition had been filed with the United States Court of Federal Claims seeking compensation for a SIRVA injury and petitioner's attorney "specifically asked us to look at visits from December 3, 2014 June 3, 2015 and December 29, 2015" noting the records document no trauma, injury, joint or muscle pain. Id. at 422, 423. Dr. Josephson noted difficulty in recalling the appointments but confirmed left shoulder related complaints and examinations during the December 3, 2014, June 3, 2014, and December 29, 2015 visits, as well as visits subsequent thereto. Pet. Ex. 14 at 423. Dr. Josephson concluded the November 2, 2017 visit with a summary of petitioner's history of left shoulder and arm pain following a flu vaccine on October 22, 2014. *Id.* at 429.

## B.  Procedural History

Petitioner filed his petition, several medical records, and an affidavit on October 13, 2017. Pet., ECF No. 1; Pet. Ex. 1-6, ECF No. 1. This case was originally assigned to the Special Processing Unit ("SPU"). Notice, ECF No. 5. Petitioner was ordered to file all outstanding medical records by October 27, 2017. Order, ECF No. 10.

Petitioner filed motions for authority to issue subpoenas to secure medical records, all of which were granted. A December 18, 2017 deadline to file the records was set. Motions, ECF Nos. 6-9, 13; Orders, ECF No. 15-19. Petitioner's deadline was then extended to January 5, 2018. Non-PDF Order, dated December 20, 2017.

On January 5, 2018, petitioner filed updated medical records and a motion for extension of time to file additional records by February 20, 2018. Pet. Ex. 7-9, ECF No. 20; Motion, ECF No. 21. This motion was granted. Non-PDF Order, dated January 8, 2018.

Petitioner filed updated medical records and a Statement of Completion on February 5, 2018. Pet. Ex. 10, ECF No. 22-23. Respondent was ordered to file a status report identifying any outstanding records and indicating how he intended to proceed by April 6, 2018. Order, ECF No. 24. On April 6, 2018, respondent filed a status report requesting an additional 60 days to file his status report; the requested was granted. Respondent's Status Report ("Resp. Status Rep."), ECF No. 25; Non-PDF Order, dated April 6, 2018.

Petitioner filed additional motions for authority to issue subpoenas to obtain medical records in June and July of 2018. Motions, ECF Nos. 27, 29, 33-35, 40. All of petitioner's motions were granted. Orders, ECF Nos. 28, 30, 36-39, 41. Petitioner filed updated records on July 24 and 25, 2018, and September 10, 2018. Pet. Ex. 13-15, ECF Nos. 42-43, 45. Following petitioner's Statement of Completion, respondent was ordered to file a status report regarding the completeness of the record. ECF No. 46; Non-PDF Order, dated September 11, 2018.

After an extension of time, respondent filed a status report on November 23, 2018 advising

that he completed his review of the medical records and intended on filing a Rule 4(c) Report. Resp. Status Rep., ECF No. 28. He requested that the Rule 4(c) Report deadline be set for January 7, 2019. *Id.* The deadline was set accordingly. Non-PDF Order, dated November 26, 2018.

Following a government shutdown from December 22, 2018 to January 28, 2019, respondent filed his Rule 4(c) Report on March 1, 2019. In his report, respondent highlighted several issues in this case, including petitioner's failure to report shoulder pain until February 11, 2015, over three months after his October 22, 2014 flu vaccination, and petitioner's chronic cervical complaints with radiculopathy. Respondent's Report, ECF No. 49. Respondent also noted that the VAERS report appeared inaccurate and incomplete, and petitioner failed to file his CVS vaccine administration records and a fax he sent to Dr. Justiz. *Id.* at 12.

This case was reassigned to me on March 5, 2019. *See* ECF No. 50. Petitioner was ordered to file his CVS vaccine administration records and the fax to Dr. Justiz by May 2, 2019. Order, ECF No. 52. Petitioner filed additional motions for authority to issue subpoenas. Motions, ECF Nos. 53, 55. Both requests were granted. Order, ECF Nos. 54; Order, ECF No. 56.

Petitioner filed the requested fax on March 28, 2019 and the CVS records on April 9, 2019 Pet. Ex. 16-17, ECF Nos. 57-58.

A status conference was held on July 11, 2019. The medical records and multiple issues were discussed at length. Order, ECF No. 59. I advised counsel that petitioner would need to file his VA records and all records associated with the motor vehicle accident in which he was involved in December of 2014. Further, Dr. Josephson would need to be produced for testimony to explain his medical records. *Id.* Respondent advised that he was satisfied there was sufficient proof of vaccination, but he required clarification of the VAERS report including when it was written, who wrote it, and on what information and/or records the report was based. Petitioner was ordered to file a status report indicating how he wished to proceed or produce the following: (1) a complete copy of his VA medical records; (2) all records related to his accident of December 2014, including records associated with any resulting personal injury lawsuit; (3) an explanation regarding petitioner's VAERS report, indicating when it was created, who created it, and what information it was based on; and (4) Dr. Josephson's availability for testimony. ECF No. 55.

Eleven days later, on July 22, 2019, petitioner filed a Motion to Dismiss his claim. Motion, ECF No. 60. A decision dismissing petitioner's claim was issued the same day. Decision, ECF No. 62.

On October 22, 2019, petitioner filed the instant application for attorneys' fees and costs, along with supporting documentation, requesting $14,830.10 in attorneys' fees and $3,110.37 in costs, for a total of $17,940.47. Motion, ECF No. 66.

Respondent filed his Response on November 22, 2019 stating that reasonable basis did not exist for petitioner's claim "[g]iven that petitioner's contemporaneous records unequivocally establish that any shoulder pain reported in late 2014, 2015, or 2016, were attributed to cervical radiculopathy or mononeuropathy, and petitioner submitted no expert evidence to overcome the opinions of his treating doctors, petitioner's records make clear that he could not establish a viable

SIRVA claim." Resp. Response at 17, ECF No. 69. Additionally, "[P]etitioner's claim was likely not filed with good faith because his treating doctors informed him numerous times that his left shoulder symptoms were most likely related to his cervical radiculopathy and they were unable to state that his vaccine played a role in his condition." *Id.* at 19.

Petitioner filed his Reply on December 16, 2019. Reply, ECF No. 71. Petitioner maintained that the records in counsel's possession at the time of filing revealed a factual basis to support a feasible claim. *Id.* at 15. Petitioner submitted that the claim was filed in good faith despite the possible alternative causes since "[p]etitioners can and have had cervical issues that contribute to their symptoms independent of their SIRVA injury and/or have been misdiagnosed as the result of a concurrent medical conditions. These are issues that could be resolved through expert reports and/or by a finder of fact." *Id.* at 14. Moreover, "[u]pon receipt and review of [p]etitioner's outstanding medical records and conversations with [p]etitioner regarding the discrepancies in his medical records, [petitioner's counsel] took action to withdraw the petition." *Id.* at 15. Petitioner's counsel increased her fees request to "$23,831.37, which is the combination of Petitioner's counsel fees and costs as previously requested ($17,940.47), plus attorneys' fees of $2,690.00 incurred in order to research and prepare the instant Motion." *Id.* Petitioner's counsel's computation was in error, the sum of $17,940.47 (the total for fees and costs previously requested) plus an additional $2,690.00 is $20,630.47, not $23,831.37.

Adjudication of petitioner's Motion was deferred while the Federal Circuit considered the factors contributing to an analysis of reasonable basis. The Federal Circuit provided additional guidance in *Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337 (Fed. Cir. 2020).  The Federal Circuit then issued another decision regarding the reasonable basis standard in *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374 (Fed. Cir. 2021).

This matter is now ripe for determination.

## II. LEGAL STANDARDS AND ANALYSIS

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs ("fees" or "fee award"). *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1).

## A.    Reasonable Basis

### a.   Legal Standard

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis is to focus on the requirements for a

petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when more than a mere scintilla of objective evidence, such as medical records or medical opinions, supports a feasible claim prior to filing. *See Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020); *see Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a scintilla looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Hum. Servs.,* 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC,* 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis, and medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted, *Simmons*, 875 F.3d at 636, but a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham,* 971 F.3d at 1344. The Federal Circuit reiterated that counsel conduct is subjective evidence, not to be considered when evaluating reasonable basis. *Cottingham*, 971 F.3d at 1345. A counsel's attempt or desire to obtain additional records prior to filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius,* 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *See James-Cornelius,* 984 F.3d at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements cannot alone support reasonable basis and special masters may make factual determinations as to the weight of evidence. *See, e.g., Chuisano,* 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Hum. Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham,* 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, *Chuisano*, 116 Fed. Cl. At 288, an overwhelming lack of objective evidence will not support reasonable basis. *See Simmons,* 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years prior to filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing

*Randall v. Sec'y of Health & Hum. Servs.,* No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may also lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius,* 984 F.3d at 1381.

### b.   Reasonable Basis Existed at the Time of Filing

Billing records in this case reveal that petitioner contacted counsel on October 5, 2017 and provided counsel with several of his medical records. Motion at 5. Counsel conducted a review of the medical records on October 12, 2017, and the Petition was filed on October 13, 2017 along with Petitioner's Exhibits 1 through 8, which were provided to counsel by petitioner. Motion at 5; Reply at 9.

The medical records that accompanied the petition included: a vaccine record for a flu vaccine administered on October 22, 2014; a one-page VAERS report that appears to have been filled out by the pharmacist on "11/10/14," stating "[t]hrobbing pain in left arm/shoulder upper"; the records of Dr. Josephson documenting a December 3, 2014 visit with no complaint of shoulder pain and normal examination, a visit on June 3, 2015 with no complaint of shoulder pain and "unremarkable" examination, a visit on December 28, 2015 with no complaint of shoulder pain and normal examination, a visit on January 7, 2016 for an upper respiratory infection, and a visit on June 8, 2016, during which petitioner received influenza and pneumococcal 13 vaccinations—this record included, "reviewed left arm nerve pain and paresthesias since flu shot in left arm OCT 22, 2014 not resolving reviewed consideration of getting nerve conduction study for this with neurology, has seen Kandel in past." Pet. Ex. 1; Pet. Ex. 2; Pet. Ex. 3 at 1-5, 6-9, 14-19, 19, 25-29.

A visit on December 7, 2016 listed back pain, cervical spinal stenosis, degenerative disc disease cervical, degenerative disc disease lumbar, neck pain, nerve pain, shoulder pain as problems, and the "Diagnosis" included neck pain, degenerative disc disease cervical, cervical spinal stenosis, shoulder pain, back pain, degenerative disc disease lumbar along with other chronic health conditions. Pet. Ex. 3 at 35-36, 38. The record concluded with:

> Reviewed history of left shoulder pain and weakness does seem to came [sic] on after injection with a flu shot a couple years ago [sic] couple years ago has followed this also again with neurology[,] Dr. Kandel[,]l and pain management[,] Dr. Warden[,] largely has [sic] stable again get [sic] some relief with Celebrex but does still have periodic problems…

*Id.* at 39. The record from a visit to Dr. Josephson on September 5, 2017 included the following under "History of Present Illness":

> Patient presents today to follow-up and review his ongoing concern with probable vaccine adverse event that came on after he received a flu vaccination at his CVS Pharmacy 10/22/2014[.] [P]atient reported that after the flu shot he began to have discomfort in his arm[.] [H]e did file a report with the CVS on 11/1/2014 because of the ongoing throbbing pain and discomfort and reduced range of motion and has had ongoing problems with the left upper arm shoulder and even into the lower arm ever since that vaccination. He initially brought this up with us when he was seen for a lab follow-up visit on December 3 of 2014 and at that time we had simply discussed the use of anti-inflammatories[,] Tylenol[,] stretching range of motion[,] ice packs versus heat packs and other modalities with the thought process being that this would likely be a short-term soft tissue item that would resolve. When we saw the patient in follow-up for his annual physical exam in June 2015 he again reported that he was continuing to have some discomfort…When the patient was seen for a subsequent lab follow-up and medication review in December 2015 the ongoing concern was again reviewed…in June 2016 he was having ongoing concerns and plans are [sic] made at that time to refer him for neurologist…Patient has had history in the past of some neck pain and cervical degenerative disc disease but that does not seem in any fashion to be related to this arm pain…Presents today to review his ongoing vaccine adverse event reporting that he is [sic] activated through the vaccine adverse event reporting system.

*Id.* at 48-49. Following an examination, Dr. Josephson noted continued tenderness over left deltoid and documented left shoulder pain, left arm pain, immunization reaction, and neck pain under his impressions. *Id.* at 53. The record further indicated that Dr. Josephson:

> Reviewed ongoing pain concerns…and did discuss next step [sic] as far as further evaluation…did discuss consideration of an MRI…also could consider proceeding to an evaluation with orthopedics for their impressions and recommendations. Reviewed in detail with the patient again his neck history also and that does not seem to be any relation of the arm findings to his neck degenerative disease and history.

*Id.* at 54.

The petition was also filed with records from Dr. Kandel. Pet. Ex. 4. However, the record is largely indecipherable as it seems the system the record was generated with is incompatible with the format with which the original record was created—a lot of text appears as HTML code. The legible portion of the exhibit indicates Dr. Kandel treated petitioner for lumbar radiculopathy, headaches, pain in the thoracic spine, other muscle spasm, pain in the left shoulder, cervicalgia, abnormalities of gait and mobility, insomnia due to medical condition, causalgia of left upper limb, muscle weakness, and sleep related bruxism. *Id.* at 8-9. Records from Dr. Justiz (filed as Dr. Justice) were also filed with the petition. Pet. Ex. 5. The record showed that education and decision aids regarding SIRVA injuries were provided to petitioner. *Id.* at 1. An active adverse drug effect

of vaccine influenza was noted under "Problems." *Id.* at 2. An MRI performed on September 29, 2017 revealed supraspinatus, infraspinatus, and subscapularis tendinosis; moderate arthrosis of the glenohumeral joint; superior labral tear; acromioclavicular joint hypertrophy with narrowing of the subacromial space; small glenohumeral joint effusion. *Id.* at 3.

The final record filed with the petition was the affidavit of petitioner in which he affirmed being injured by a flu vaccine received on October 22, 2014 with his injury lasting more than six months. Pet. Ex. 6.

In discussing the reasonable basis requirement in *Cottingham*, the Federal Circuit stressed the *prima facie* petition requirements of section 11(c)(1) of the Act. 971 F.3d at 1345-46. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee: (1) received a vaccine listed on the Vaccine Injury Table; (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States; (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table or that was caused by the vaccine; (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and (5) has not previously collected an award or settlement of a civil action for damages for the same injury. §§ 11(c)(1)(A) – (E).

Consistent with the above, the records filed were contemporaneous and facially trustworthy medical records demonstrating that petitioner received a covered vaccine administered in the U.S., Pet. Ex. 1; that petitioner experienced symptoms of a shoulder injury, *see* Pet. Exs. 2-5; and that his symptoms persisted for at least six months. Petitioner affirmed that he had not received an award or settlement in a civil action for damages for the same injury. Pet. Ex. 1 at 2.

The medical records provide objective evidence that petitioner may have suffered a shoulder injury following a flu vaccine on October 22, 2014. Petitioner's treating physicians indicated a possible SIRVA injury and, at a minimum, noted that petitioner experienced left shoulder pain following the vaccine. *See* Pet. Ex. 5 at 2; *see* Pet. Ex. 3 at 39-54. While there may have been concurrent conditions and injuries that petitioner suffered and respondent rightly states that petitioner was notified about cervical radiculopathy throughout the course of several years, the resolution of these issues need not be fully contemplated under reasonable basis. As the Federal Circuit has affirmed "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis," *Cottingham*, 971 F.3d at 1346. Petitioner's complaints and continued efforts in seeking treatment as documented in the records provide sufficient objective evidence to establish reasonable basis for a shoulder injury at the time of filing.

### c.   Reasonable Basis was Maintained Until Dismissal

A claim loses reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)). Petitioner in this instance alleged a SIRVA injury. Thus, the special master must evaluate whether evidence submitted after the filing of the petition continued to support a feasible Table SIRVA Claim as detailed in the Vaccine Injury Table. *See* 42 C.F.R. § 100.3(a)(XIV)(B). The Qualifications and Aids to Interpretation require: "(i) No history of pain, inflammation or

dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame [of 48 hours]; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms." 42 C.F.R. § 100.3(c)(10)(i-iv).

On February 5, 2018, petitioner filed the medical records of Drs. Gates, Kandel, Warden and Josephson. Pet. Exs. 7, 8 and 9. Updated records from Dr. Justiz were filed on May 4, 2018 and additional records from Dr. Gates were filed on July 24, 2018. Pet. Ex. 11; Pet. Ex. 12. Pre-vaccination internal medicine records were filed on July 25, 2018, and updated records of Dr. Dernbach and Dr. Josephson were filed on September 10, 2018. Pet. Ex. 13; Pet. Exs. 14 and 15. On March 28, 2019 and April 9, 2019, petitioner filed the fax to Dr. Justiz dated October 4, 2017 and the CVS Caremark records associated with his October 22, 2014 flu vaccine. Pet. Ex. 16; Pet. Ex. 17. The fax to Dr. Justiz requested the records be amended to reflect that he experienced left shoulder pain following turning items on his lathe, to clarify his epilepsy history, and to note that he did not have right shoulder pain. Pet. Ex. 16 at 1-3.

After all the foregoing records were obtained and filed, an analysis on entitlement was then possible and revealed several inconsistencies. For example, and by no means exhaustive, on February 11, 2015, petitioner reported to Dr. Dernbach that his left arm pain started after a shot at a pharmacy without providing timing of onset. Pet. Ex. 4 at 27. Similarly, petitioner provided no time of onset to Dr. Josephson other than reporting that he had pain since his flu vaccine in October of 2014. However, later-filed decipherable records from Dr. Kandel indicated that on June 11, 2016 petitioner reported that his arm pain began ten days after vaccination, while on September 28, 2017, petitioner reported immediate pain at the time of vaccination. Pet Ex. 8 at 1; Pet. Ex. 14 at 34. The onset inconsistencies became clear with the filing of these records and raised questions as to whether petitioner could satisfy the 48-hour onset requirement of a SIRVA injury. It left open a possible claim to an off-Table shoulder injury. A status conference was held on July 11, 2019, during which the issues and inconsistencies were discussed at length. *See* Scheduling Order, ECF No. 59. A course of action was discussed and agreed upon by the parties for the production of additional records and for testimony from Dr. Josephson to explain his records and the content thereof. Shortly thereafter, petitioner filed for voluntary dismissal of his claim. Motion to Dismiss, ECF No. 60.

Petitioner voluntarily dismissed his claim once a full review of the medical records revealed significant inconsistencies on several issues.   As submitted by petitioner's counsel, "[W]hen it became evident to the undersigned that there was no reasonable explanation for the inconsistencies, the undersigned filed a Motion for a Decision Dismissing the Petition". Reply at 15.

Focusing on the requirements for a SIRVA claim to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery and in view of the totality of the circumstances, I find that there was a reasonable basis for maintaining this claim until the additional records were filed and the various inconsistences were noted without reasonable explanation in the additionally filed records. The matter was then promptly and appropriately

dismissed. Therefore, petitioner maintained reasonable basis throughout the pendency of this matter.

## B.     Good Faith

### a.  Legal Standard

In contrast to reasonable basis, "good faith" is a subjective standard. *Simmons*, 875 F.3d at 635, *Chuisano*, 116 Fed. Cl. at 289. It is generally accepted that a petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *See Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *4-5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). A good faith analysis also considers petitioner's attorney's conduct and whether the attorney has fulfilled their duties to the Court. *See Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014); *see Crowding* 2019 WL 1332797, at *15. The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare. *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-86V, 2011 WL 4433646, *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In the Vaccine Program, petitioner is entitlement to a presumption of good faith, and a special master is justified in presuming good faith "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). However, good faith may be absent from the moment a claim is filed or may be lost during the pendency of a claim. *See Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (where reasonable basis ceases to exist, a claim cannot be maintained in good faith); *see Crowding v. Sec'y of Health & Hum. Servs.*, No. 16-876V, 2019 WL 1332797, *18 (Fed. Cl. Spec. Mstr. Feb. 26, 2019) (good faith is lost when altered records were filed by petitioner).

Past evaluations of whether a petitioner held an honest belief that a vaccine injury occurred have involved their knowledge of alternative causes such as child abuse; their refusal of further vaccines; their communications with counsel and experts; and their conduct in prosecuting claims once they are filed. *See Crowding,* 2019 WL 1332797 at *12 (citing *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-86V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Moran v. Sec'y of Health & Hum. Servs.*, No. 07-363V, 2008 WL 8627380 (Fed. Cl. Spec. Mstr. Dec. 12, 2008); *O'Dell v. Sec'y of Health & Hum. Servs.*, No. 89-42V, 1991 WL 123581 (Fed. Cl. Spec. Mstr. June 19, 1991)). The integrity of records and sworn statements have also been discussed in bad faith findings. In *Skwiat*, the special master found that a petitioner claiming a SIRVA injury acted in bad faith when she was aware of a past motor vehicle accident that resulted in chronic and unresolved shoulder pain yet signed an affidavit affirming no prior history of injury. *See Skwiat v. Sec'y of Health & Hum. Servs.*, No. 18-0685V, 2020 WL 3970182, at *7 (Fed. Cl. Spec. Mstr. June 12, 2020). The special master further cited petitioner's failure to notify new treaters of her prior injury in discussing petitioner's bad faith. *Id.* Special masters have also found bad faith when medical records have been altered, whether by petitioner directly or at petitioner's request for the purposes of benefiting their claim. *See Purnell-Reid v. Sec'y of Health & Hum. Servs.*, No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020) (finding bad faith when petitioner filed her petition with altered records that specifically supported a 48-hour onset for her SIRVA claim); *see Crowding*, 2019 WL 1332797, at *9 (finding bad faith when petitioner filed records amended by the office manager at petitioner's request); *see Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996) (finding bad faith

when petitioner filed medical records with obvious alterations designed to benefit petitioner's claim).

In considering attorney conduct in the context of good faith, case law suggests that good faith requires a petitioner's attorney to exercise professional judgment in evaluating a claim and to investigate a claim when possible. *See Crowding*, 2019 WL 1332797, at *10; *Simmons*, 875 F.3d at 636 ("an impending statute of limitations deadline may relate to whether 'the petition was brought in good faith' by counsel"); *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018) ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period .... are properly evaluated in determining whether a petition was brought in good faith"); *Cortez v. Sec'y of Health & Hum. Servs.*, No. 09-176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014) ("Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual."). In *Crowding*, the special master found that petitioner's attorney lost good faith in filing petitioner's obviously altered records without any investigation. 2019 WL 1332797, at *12, *14 (finding petitioner's attorney's decision to file records amended by the office manager "without investigation, explanation, or context for the Court warrants criticism," and "constituted at least a negligent misrepresentation to the Court").

Despite considering an attorney's conduct, special masters have held that petitioner's conduct alone can warrant a denial of fees. Petitioner's counsel may not be aware of petitioner's actions amounting to bad faith, and as a special master carefully noted, negligence is not bad faith, but petitioner's conduct can sufficiently "fail the good faith test such than an award of fees is not appropriate regardless of whether counsel also so acted." *Purnell-Reid v. Sec'y of Health & Hum. Servs.*, No. 18-1101V, 2020 WL 2203712, at *8 (Fed. Cl. Spec. Mstr. Apr. 6, 2020). Put a different way, denial of fees due to bad faith does not necessarily mean that counsel acted in bad faith.

### b. Petition was Filed in Good Faith

In this instance, respondent questions good faith, submitting that petitioner was repeatedly advised that his shoulder pain was due to alternative causes—"contemporaneous records unequivocally establish that any shoulder pain reported in late 2014, 2015 or 2016 were attributed to cervical radiculopathy or mononeuropathy." Resp. Response at 17. Respondent also highlights petitioner's request for Dr. Kandel to write a statement explaining that his left shoulder pain was caused by a vaccination and Dr. Kandel declining to do so. *Id.* at 18. Respondent argues that, having been advised repeatedly of cervical radiculopathy over a three-year period, petitioner cannot reasonably demonstrate an honest belief that his shoulder pain was caused by his vaccination. *See* Resp. Response at 18.

Petitioner's counter to respondent's criticism, however, is well taken. An alternative cause for petitioner's left shoulder pain, "does not automatically destroy good faith." Reply at 14. As submitted in his Reply, petitioners can and do often have cervical issues independent of their claims of a vaccine shoulder injury and/or have been misdiagnosed as a result of a concurrent medical condition. *Id.* These are issues routinely found in Program cases and are typically resolved through expert reports or by the fact finder following a hearing. Additionally, while Dr. Kandel did not write a supportive letter as requested, he advised petitioner that he simply could not state

"with any degree of medical certainty or probability whether or not the injection was the major contributing factor" while noting that petitioner's shoulder pain did begin following the vaccination. Pet. Ex. 8 at 141.

Respondent further postures that petitioner's attempts to have his treating physicians "retroactively amend their medical records" does little to support a finding of good faith. Resp. Response at 19. Respondent's logic is not entirely correct. While there is no question that petitioner sought to have his records amended, the act of amending records itself is not proof of nefarious intent or lack of good faith. As documented by Dr. Kandel, petitioner believed all his pain was associated with a possible vaccination event, even if not consistent with clinical findings. *See generally* Pet. Ex. 8. Petitioner's endeavors to have his records amended to reflect his complaints of shoulder pain following his flu vaccine and to correctly document his medical history may mean nothing more than simply that. Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), an individual "has the *right* to have a covered entity amend protected health information". 45 C.F.R. § 164.526(a)(1) (emphasis added).

Petitioner had a right to request amendments to his medical records if he believed the records did not accurately reflect his complaints and intent cannot be read into his actions without further information. Unlike the cases mentioned in which special masters found bad faith, petitioner did not seek to alter facts about his left shoulder pain or hide other incidents that may have involved his shoulder, but rather to clarify his record. Petitioner moved for dismissal of his case prior to any testimony being given or the submission of affidavits explaining his reasons for the requests to amend his medical record. He was not specifically asked about his intent nor did the records indicate an intent to amend his records in order to benefit his claim. To conclude that those requests mean more than what they facially appear to be would be speculation and would be antithetical to the presumption of good faith petitioner is entitled to.

Therefore, the petition was filed in good faith.

### III. REASONABLE ATTORNEYS' FEES AND COSTS

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.,* 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee

request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.,* 86 Fed. Cl. 201, 209 (2009). A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 729 (2011).

## A.   Hourly Rates

Here, petitioner requests the following hourly rates for the attorneys and paralegals from her firm who worked on this matter:

**Shaleane Mancuso – Attorney**
   2017-19: $250.00/hr

**Paul Brazil – Attorney**
   2017-19: $317.00/hr

**Maria Loecker and Michelle Coles– Paralegals**
   2017-19: $125.00/hr

**Tereza Pavlacsek– Paralegal**
   2017-19: $140.00/hr

The undersigned finds that the requested rates are reasonable and in accordance with what the members of the Mueller Brazil firm have previously been awarded for their Vaccine Program work. *See, e.g., Tucker v. Sec'y of Health & Hum. Servs.,* No. 19-13V, 2020 WL 6777559, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2020); *Olschansky v. Sec'y of Health & Hum. Servs.*, No. 17-1096V, 2020 WL 1027681 (Fed. Cl. Spec. Mstr. Feb. 21, 2020). The undersigned will therefore award the rates requested.

## B.   Reasonable Fees

It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. *Bell v. Sec'y of Health & Hum. Servs.*, 18 Cl. Ct. 751, 760 (1989). Petitioner bears the burden of documenting the fees and costs claimed.

Upon review, the overall hours spent on this matter appear to be reasonable. The undersigned has reviewed the billing entries and finds that the billing entries adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear objectionable, nor has respondent identified any entries as objectionable. Therefore, petitioner's initial fee request of $14,830.10 plus the additional $2,690.00 in attorney's fees for the Reply is reasonable. **Accordingly, petitioner is entitled to a final award of attorneys' fees in the amount of $17,520.10.**

## C. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $3,110.37 in costs. Petitioner has provided adequate documentation supporting the requested costs and all appear reasonable in the undersigned's experience. **Accordingly, petitioner is entitled to final attorneys' costs of $3,110.37.**

## IV. CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate petitioner and his counsel as follows:

**Attorneys' Fees –**

| | |
|---|---|
| Requested Attorneys' Fees: | $20,721.00 |
| Correction due to mathematical error: | - ($3,200.90) |
| Awarded Attorneys' Fees: | $17,520.10 |
| | |
| Requested Attorneys' Costs: | $3,110.37 |
| Awarded Attorneys' Costs: | $3,110.37 |
| | |
| **Total Attorneys' Fees and Costs:** | **$20,630.47** |

**Accordingly, the undersigned awards:**

**A lump sum in the amount of $20,630.47 representing reimbursement for reasonable interim attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel of record, Mr. Paul Brazil.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[3]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.